UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA

Petitioner,

v.

TIMOTHY ECKERSON,

Respondent.

CIVIL NO. 01-807 (DSD/JMM)

REPORT AND RECOMMENDATION

On May 9, 2001, the United States filed a Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. §4245. [Docket No. 1]. The Petition alleges that Respondent Timothy Eckerson is presently suffering from a mental disease or defect for the treatment of which he is in need of custody and care in a suitable psychiatric facility. Respondent is a federal prisoner serving a 121-month sentence for multiple drug-related crimes. He is currently housed in the Mental Health Unit of the Federal Medical Center at Rochester, Minnesota ("FMC-Rochester"). The Petition alleges that Respondent has refused care and treatment at FMC-Rochester.

On June 26, 2001, a hearing was held at FMC-Rochester to determine whether Respondent is suffering from a mental disease or defect for which he is in need of custody for care or treatment in a suitable psychiatric facility. Assistant United States Attorney Joan Humes appeared on behalf of Petitioner; Katherine Menendez, Esq. appeared on behalf of Respondent, who was personally present. The Court heard testimony from Respondent and psychiatrist D. Christine Sigurdson, PhD., M.D.

This matter is before the undersigned Magistrate Judge for a Report and Recommendation to District Judge David S. Doty pursuant to the provisions of 28 U.S.C.

JUL 18 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

§636 (b)(1)(B). Upon the following Findings of Fact/Report, it is recommended that the Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. §4245 [Docket No. 1] be granted, that Respondent be committed to the custody of the Attorney General, and that the Attorney General hospitalize Respondent at FMC-Rochester.

**FINDINGS OF FACT/REPORT**

Under 18 U.S.C. §4245, a prisoner who is serving time in a federal prison may not be transferred to a mental hospital without the prisoner's consent or a court order. United States v. Watson, 893 F.2d 970, 975 (8th Cir.), vacated in part on reh'g on other grounds by United States v. Holmes, 900 F.2d 1322 (8th Cir.), cert. denied, Watson v. United States, 497 U.S. 1006 (1990). If the prisoner objects to being transferred, the court must order a hearing to determine if there is "reasonable cause to believe that the person may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. §4245(a); United States v. Jones, 811 F.2d 444, 447 (8th Cir. 1987). "If, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General." 18 U.S.C. §4245(d). The Attorney General must then hospitalize the prisoner "for treatment in a suitable facility until he is no longer in need of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier." Id.

In summary, the Court is required to determine the answers to three questions: "Is the Respondent suffering from a mental disease or defect? If so, is the Respondent in need of custody for care or treatment of that disease or defect? If so, is the proposed facility a suitable facility?" United States v. Horne, 955 F. Supp. 1141, 1144 (D. Minn. 1997).

## I. RESPONDENT IS SUFFERING FROM A MENTAL DISEASE OR DEFECT.

Dr. Sigurdson testified that she had been Respondent's primary psychiatrist since December 2000. Respondent was transferred to FMC-Rochester from the Federal Correctional Institution at Elkton, Illinois ("FCI-Elkton") on November 7, 2000 because staff members at FCI-Elkton believed him to be in need of psychiatric care. Respondent told a psychologist at FCI-Elkton that he believed staff members had implanted camcorders into his eyes to monitor his activities, and that he had experienced sensations of electricity running through his body. He also experienced auditory hallucinations. In July 2000, Respondent threatened to kill several white inmates, apparently for racially-based reasons. On October 26, 2000, Respondent was placed in the Special Housing Unit ("SHU") at FCI-Elkton because of threatening behavior toward other inmates and gross psychological deterioration. He was transferred to FMC-Rochester after becoming physically aggressive towards the guards who were taking him to the SHU at FCI-Elkton.

At FMC-Rochester, Respondent was also initially kept in the SHU. He began refusing to interact with members of the staff, and refusing to go to an interview cell to talk to doctors. Eventually, Respondent seemed ready to be transferred out of the SHU. He was moved to a semi-locked unit, and then to an open unit. During this time he was

consistently calm and cooperative. However, he sometimes made peculiar statements about being black, and had bursts of inappropriate laughter. Although he denied paranoia, he moved his bed to block the door to his room and slept on the floor beside it. He had trouble answering questions directly and his responses were often vague and tangential. He denied experiencing hallucinations, although during an interview he asked Dr. Sigurdson if she heard voices, could see "things" all around her, or had a light in her head.

On December 20, 2001, Respondent was placed back in SHU as punishment for swearing at a staff member, refusing to work, and taking a threatening physical stance. A staff psychologist found that Respondent was competent to proceed with a hearing regarding the incident. Although Respondent's behavior at the hearing was described as "guarded" and "strange," in general he handled himself appropriately during the proceeding.

Respondent was released from SHU on January 31, 2001. There were no further incidents until March 21, 2001, when Respondent was overheard telling another inmate that he would "back him up" if he refused to take his medication. This comment was interpreted as an attempt to incite the other inmate not to take his medication. When an officer intervened in the situation, Respondent threatened to physically assault the officer. Several officers then asked Respondent to go voluntarily to SHU until he could be evaluated the next day. Respondent refused to go, and was taken to SHU by force.

Based upon these facts and a review of Respondent's medical record, Dr. Sigurdson opined that he is suffering from schizophrenia. The essential features of schizophrenia are the presence of characteristic psychotic symptoms during the active phase of the illness and a decreased level of function in areas such as social relations.

Watson, 893 F.2d at 972 n.2. Psychotic symptoms may include delusions, hallucinations, incoherence, catatonic behavior, or flat or inappropriate affect (facial expressions). Id. The Court found Dr. Sigurdson, who has a Ph.D. from the University of Colorado and an M.D. from the University of Minnesota, to be a credible witness. At the time of the hearing, Dr. Sigurdson had been working as a staff psychiatrist at FMC-Rochester for more than eight years. In the course of evaluating Respondent for the presence of a mental illness, Dr. Sigurdson reviewed Respondent's medical files and met with Respondent on multiple occasions. The evidence of Respondent experiencing hallucinations and paranoid delusions, as well as his adversarial and aggressive behavior towards staff members, supports Dr. Sigurdson's diagnosis.

Respondent has not introduced any expert medical testimony to contradict Dr. Sigurdson's diagnosis. See United States v. Steil, 916 F.2d 485, 488 (8th Cir. 1990) (where mental health professionals found inmate to be mentally ill, the Eighth Circuit emphasized that "there is no medical opinion to the contrary in the record before us" in affirming the district court's conclusion that the inmate was mentally ill and dangerous under 18 U.S.C. § 4246). Given Dr. Sigurdson's expert opinion and the evidence received at the hearing, the Court finds that the Government has carried its burden of showing by a preponderance of the evidence that Respondent is suffering from a mental disease or defect.

## II. RESPONDENT IS IN NEED OF CUSTODY FOR CARE OR TREATMENT.

Title 18 U.S.C. §4245(d) does not define when a prisoner is "in need of custody for care or treatment," and there is very little case law discussing what standard

should be applied. The Fourth Circuit has found that prisoners suffering from schizophrenia are "in need" of treatment under 18 U.S.C. §4245 where a diagnosis is properly supported by psychological or psychiatric testimony. See United States v. Tyus, 1992 WL 51312 (4th Cir. Mar. 19, 1992)(where two experts testified that prisoner suffered from schizophrenia and needed treatment, the Fourth Circuit affirmed the district court's determination that the prisoner should receive treatment); see also United States v. Martinez, 1992 WL 214483 (4th Cir. Sept. 2, 1992)(where psychologist testified that prisoner suffered from schizoaffective disorder and required custodial treatment, the Fourth Circuit upheld the district court's determination that the prisoner should receive treatment). However, the question of whether a prisoner is in need of custody for care and treatment is separate from the question of whether he is ill, and therefore it would seem that Petitioner must show more than mere illness to meet its burden with respect to the need for custodial treatment.

The question of when a prisoner is "in need" of custodial treatment has been discussed in one case by the District Court, United States v. Horne, 955 F. Supp. 1141 (D. Minn. 1997). "[I]f a prisoner whose mental illness was left untreated would pose a danger to himself or others if placed in the general prison population. . . . treatment is needed within the meaning of 18 U.S.C. §4245." Horne, 955 F. Supp. at 1149. However, in order to be needed, treatment must be more than merely beneficial to the prisoner. Id. at 1147. Between these two extremes is a continuum of "need," and it is unclear where the line is drawn for purposes of §4245.

We need not resolve this difficult question because, in this case, the Court finds that Respondent will pose a danger to staff, other inmates, and himself, if his mental

illness is left untreated. Respondent has been physically assaultive on at least two occasions, and has made verbal threats on several others. While at FMC-Rochester he has made efforts to racially segregate the television viewing area, and has on multiple occasions ordered other inmates out of a bathroom and proceeded to wash his genitals in one of the sinks. While these incidents did not result in physical confrontations, if they had occurred at a regular federal correctional facility, it is unlikely that they would have been resolved peaceably. Because Petitioner has shown that Respondent will pose a danger to himself and others if placed in the general prison population, the Court concludes that he is in need of custody for care and treatment within the meaning of §4245.

## III. FMC-ROCHESTER IS A SUITABLE FACILITY.

The Court finds that FMC-Rochester is a suitable facility for the Respondent to receive care or treatment. FMC-Rochester is a fully accredited hospital providing a wide range of medical and therapeutic options to incarcerated inmates. Dr. Sigurdson testified that Respondent could not get the medical attention that he needs at a regular prison facility, and gave her expert opinion that FMC-Rochester would be a proper facility for Respondent. Respondent offered no evidence to prove that FMC-Rochester is an inappropriate facility for him.[1]

---

[1] At the hearing, Respondent expressed concern at the prospect of being treated with medications. The determination of whether Petitioner may forcibly administer psychotropic drugs to Respondent may be made only following Respondent's commitment under 18 U.S.C. §4245, and is not before the Court at this time. If a decision is made by Respondent's treating doctor to forcibly medicate Respondent, he may seek review of that decision in an administrative due process hearing. See Horne, 955 F. Supp. at 1151 (citing 28 C.F.R. §549.43).

**RECOMMENDATION**

For the reasons set forth above, it is recommended that the Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. §4245 [Docket No. 1] be granted, that Respondent be committed to the custody of the Attorney General, and that the Attorney General hospitalize Respondent at FMC-Rochester.

Dated: July 16, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **July 31, 2001** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **July 31, 2001**

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500